

IN THE
TENTH COURT OF APPEALS

_____

No. 10-14-00330-CR
No. 10-14-00331-CR
No. 10-14-00332-CR
No. 10-14-00333-CR

THE STATE OF TEXAS,

Appellant

v.

JAMES EDWARD LONG, MICHAEL DEWAYNE SHELTON,
JAMES WAYNE PITTS, JR. AND RICHARD BRYAN KUSSMAUL

Appellees

_____

From the 54th District Court
McLennan County, Texas
Trial Court Nos. 1993-497-C, 1993-510-C, 1993-511-C and 1993-773-C

---

## MEMORANDUM  OPINION

---

The State appeals from the trial court's finding under TEX. CODE CRIM. PRO. ANN.

Art. 64.04 (West Supp. 2014) that it was reasonably probable that James Long, Michael

Shelton, James Pitts, Jr., and Richard Bryan Kussmaul would not have been convicted

had the results of the DNA testing been available at trial.  We affirm.

## Background Facts

In 1992, Leslie Murphy and Stephen Neighbors were shot and killed, and Murphy's body showed signs of sexual assault. Pursuant to a plea bargain agreement, Long, Shelton, and Pitts, Jr., testified against Kussmaul at his capital murder trial. In Cause No. 10-14-00330-CR, James Long entered a plea of guilty to the offense of sexual assault and was sentenced to twenty years confinement. In Cause No. 10-14-00331-CR, Michael Shelton entered a plea of guilty to the offense of sexual assault and was sentenced to twenty years confinement. In Cause No. 10-14-00332-CR, James Pitts, Jr., entered a plea of guilty to the offense of sexual assault and was sentenced to twenty years confinement. In Cause No. 10-14-00333-CR, Richard Bryan Kussmaul was convicted by a jury of the offense of capital murder and was sentenced to confinement for life.

Kussmaul appealed his conviction to this Court, and we affirmed his conviction finding that the evidence was sufficient to corroborate the testimony of the three accomplice witnesses. Each of the appellants filed previous motions for DNA testing under Chapter 64 that were denied. In 2012, all four appellants again filed motions for Chapter 64 DNA testing. Long, Shelton, and Pitts, Jr., recanted the testimony they gave at Kussmaul's trial, and claimed that their trial testimony was coerced. The trial court granted the motions, and ordered DNA testing on evidence gathered during the investigation of the sexual assault and murder of the victims.

On September 12, 2014, after receiving the DNA test results, the trial court held a hearing pursuant to Article 64.04. After considering the DNA test results, the testimony and evidence admitted at the hearing, and the records in the cases, the trial court entered

findings of fact and conclusions of law. Based upon the reports filed with the trial court containing the results of the testing of all data, the trial court found in part that:

- The DNA evidence found on a cutting from the crotch of the victim Murphy's jeans, includes DNA from an unknown male. Long, Shelton, and Pitts, Jr., and Kussmaul, and the male victim, Neighbors, are excluded as contributors of the DNA found on this evidence.

- The DNA evidence found on vaginal swabs taken from Murphy includes DNA from an unknown male. Long, Shelton, and Pitts, Jr., and Kussmaul, and the male victim, Neighbors, are excluded as contributors of the DNA found on this evidence.

- The DNA evidence found on a paper towel near the bodies of the victims Murphy and Neighbors includes DNA from an unknown male. Long, Shelton, and Pitts, Jr., and Kussmaul, and the male victim, Neighbors, are excluded as contributors of the DNA found on this evidence.

- For all the DNA evidence tested for which a DNA profile could be obtained, no DNA evidence was found on any evidence that matched the profiles of Long, Shelton, and Pitts, Jr., and Kussmaul.

- The most persuasive pieces of physical evidence all exclude Long, Shelton, and Pitts, Jr., and Kussmaul.

- It is improbable that Long, Shelton, and Pitts, Jr., or Kussmaul could have sexually assaulted Murphy without depositing DNA evidence on any of the items tested under Chapter 64 of this proceeding.

- A Negroid hair was collected from the bodies of Murphy and Neighbors. However, Long, Shelton, and Pitts, Jr., and Kussmaul are Caucasian, not African-American. Accordingly none of them could have contributed the Negroid hair. The victims Murphy and Neighbors are also Caucasian and could not be the source of the Negroid hair. The Negroid hair was likely deposited by Murphy's assailant.

- The DNA testing performed under this Chapter 64 proceeding is more extensive, and has been performed by more authoritative procedures that have produced more probative and accurate results, than any DNA testing available at the time of the convictions.

- Due to the finding of DNA belonging to two unidentified males on the evidence tested under this Chapter 64 proceeding, the exclusion of Long, Shelton, and Pitts, Jr., and Kussmaul by DNA testing, and the presence of unidentified Negroid hair that could not belong to any of the victims or the movants, it is reasonably probable that one (or both) of the two unidentified males whose DNA was found on the evidence tested, rather than Long, Shelton, and Pitts, Jr., and Kussmaul (or any one or a combination of them) sexually assaulted Murphy and murdered Murphy and Neighbors.

- Had the DNA results obtained in this Chapter 64 proceeding been available at the time of the convictions, it is reasonably probable that Long, Shelton, and Pitts, Jr., would not have been convicted of the offenses of sexual assault of the female victim Murphy as either a principal or a party to the crime, and it is

reasonably probable that Kussmaul would not have been convicted of the offense of capital murder of Murphy and Neighbors as either a principal or a party to the crime.

The State appeals from the trial court's finding that it was reasonably probable that Long, Shelton, and Pitts, Jr., and Kussmaul would not have been convicted had the results of the DNA testing been available at trial.

## Standard of Review

After a person has been convicted, he can file a motion for forensic DNA testing of certain evidence containing biological material. TEX. CODE CRIM. PRO. ANN. Art. 64.01 (West Supp. 2014). If the trial court grants the motion, the trial court is required to hold a hearing "and make a finding as to whether, had the results been available during the trial of the offense, it is reasonably probable that the person would not have been convicted." TEX. CODE CRIM. PRO. ANN. Art. 64.04 (West Supp. 2014).

In reviewing the trial judge's Chapter 64 rulings, we give "almost total deference" to the trial judge's findings of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeanor, but we consider de novo all other application-of-law-to-fact questions. *Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011); *Glover v. State*, 445 S.W.3d 858, 861 (Tex.App. – Houston[1st Dist.], 2014 pet. ref'd).

Whether a person would be convicted is an inquiry distinct from whether a person is actually innocent. *Glover v. State*, 445 S.W.3d at 862 (citing *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App.2002)). Actual innocence is no longer an inquiry in reviewing the significance of the post-conviction DNA test results. *Glover v. State*, 445 S.W.3d at 862.

Instead, a "favorable DNA test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters'." *Glover v. State*, 445 S.W.3d at 862 (quoting *Ex parte Gutierrez*, 337 S.W.3d at 892).

## Analysis

In the sole issue on appeal, the State argues that the trial court erred in finding that, by a preponderance of the evidence, it was reasonably probable that Long, Shelton, Pitts, Jr., and Kussmaul would not have been convicted had the results of the DNA testing been available at trial. We will first discuss the results of the DNA evidence as it relates to Long, Shelton, and Pitts, Jr.

Long, Shelton, and Pitts, Jr. each entered a plea of guilty and were tried and sentenced by the trial court. The same trial judge held the Chapter 64 hearing to determine whether it is reasonably probable that the defendants would have been convicted had the DNA results been available at trial. The trial judge was essentially determining whether he would have accepted the pleas and found the defendants guilty had the DNA evidence been available at trial.

In 1993, DQ-alpha testing was performed on some of the items of evidence. The DQ-alpha testing excluded all four defendants as contributors. Pursuant to the trial court's 2012 order, Y-STR testing was done on more of the evidence. The Y-STR test is a more sensitive and discriminatory test than the DQ-alpha test. The Y-STR testing excluded all four defendants as contributors. However, the Y-STR testing revealed that there was DNA on the tested evidence from two unknown males. The DNA evidence

from the unknown males was found on the inner and outer crotch of the victim's jeans and undergarments, and was also found in vaginal swabs. This evidence was not known at the time of the original trial. We find that the trial court did not err in its finding that it was reasonably probable Long, Shelton, and Pitts, Jr. would not have been convicted had the results of the DNA testing been available at trial.

Kussmaul was convicted by a jury of the offense of capital murder. The trial judge was the same judge who conducted the Chapter 64 hearing to determine whether it is reasonably probable that Kussmaul would have been convicted had the DNA results been available at trial. Long, Shelton, and Pitts, Jr. pleaded guilty to the offense of sexual assault and testified against Kussmaul at trial. Long, Shelton, and Pitts, Jr. recanted their confessions in 2012.

Kussmaul was charged with causing the death of Murphy while in the course of committing aggravated sexual assault. As previously stated, the 1993 DQ-alpha testing excluded all four defendants as contributors of the DNA found on the items tested. The results from the DQ-alpha testing were not admitted at Kussmaul's trial. The Y-STR testing was conducted on additional pieces of evidence. It also excluded all four defendants, but revealed DNA from two unknown males. The DNA evidence from the unknown males was found on the inner and outer crotch of the victim's jeans and undergarments, and was also found in vaginal swabs. The Y-STR testing on the most persuasive pieces of evidence excluded Kussmaul as a contributor. For all the evidence tested, there was no DNA evidence found on any evidence that matched the profile of Kussmaul. We find that the trial court did not err in its finding that it was reasonably

probable Kussmaul would not have been convicted had the results of the DNA testing been available at trial. We overrule the sole issue on appeal in each of the cause numbers.

## Conclusion

We affirm the trial court's findings in each cause number.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 14, 2015
Do not publish
[CR 25]

